MAY TERM, 1881, No. 135.                    JUNE 7TH, 1881.

## Farwell *versus* Kohler.

Where plaintiff agreed to cut all the salable locust posts to the back line of a certain tract of land, at twelve cents per post, and actually cut the posts to a line described to him as the true line by a third person to whom defendant had referred him for directions as to the locality of the line, and the Court instructed the jury in a suit to recover for the price of the posts cut and delivered, that it was immaterial where the true line was, and the plaintiff was entitled to recover for the posts delivered, although it might subsequently turn out that the real and proper line was twenty or twenty-five rods further to the south: *Held*, not to be error, though it was in evidence that after the posts were cut the parties went together to the tract to ascertain whether the contract had been fulfilled, and were unable to agree.

ERROR to the Court of Common Pleas of *Clinton County*.

Assumpsit by W. T. Kohler against A. Farwell & Co., for compensation for cutting timber under two articles of agreement. The plaintiff and defendant entered into an agreement February 21st, 1877, as follows:

" W. T. Kohler agrees to clear off twenty rods in width from the Caldwell's run, or from Mrs. Annie Caldwell's back line of her farm to the back line on the Swayne tract,—that is, the locust posts that would be salable, and for each post to receive twelve cents for them when delivered at the depot, and when they are all cut off the twenty rods in width, and back to the back line of the Swayne tract, the same width at back line, and hauled down to the river in piles in the tree, to receive one-half of twelve cents for each post, and the other half when delivered at the depot."

Subsequently, on the 2d of March, 1877, the parties entered into another agreement, as follows:

" W. T. Kohler agrees to cut all salable locust posts from back line of Mrs. Annie Caldwell's farm, and joining the line of the first twenty rods that W. T. Kohler took to cut off, now up to the back line of the Franklin Swayne tract, where it crosses Caldwell's run, and clean all off from the run to the top of the mountain, and to the back line of the Swayne tract. When this width and space described is all cleaned off, and hauled in piles to the river in the trees, W. T. Kohler to receive six cents for each salable post, and when delivered to the depot to receive six cents more, which makes in all twelve cents a piece. If Farwell & Co. gets any orders for locust pins, to assort out the trees that is cut down and hauled in piles, and make an estimate of how many posts it might be, and Kohler paid for the number of posts to be delivered at depot just the same as posts."

The principal contention between the parties in the Court below arose through the uncertainty as to the location of

the southern line of the tract. The plaintiff cut the timber under the terms of the contract down to a line called in the evidence the Baird line. The defendant contended that he ought to have cut down to a line over twenty rods further to the south, called the White line, and that not having done so, he had not completed his contract and was not entitled to recover. The material portions of the evidence given upon the trial of the cause below, were as follows:

Kohler, the plaintiff below, testified upon cross-examination:

" Question. Now you knew where the lines of this land were.

" Answer. No, sir.

" Q. Were they ever shown to you?

" A. No, sir.

" Q. Never shown to you?

" A. No, sir; not until I got them run.

" Q. Who run them for you?

" A. Mr. Baird.

" Q. When did he run them for you?

" A. In 1877.

" Q. Soon after the contract was made?

" A. It was in the fall of 1877.

" Q. Did Mr. Baird mark the line?

" A. Yes, he and the men that was with him marked the line.

" Q. Did you tell who was with Mr. Baird?

" A. James Somerson.

" Q. Anybody else?

" A. No, sir.

" Q. Did you tell Farwell that you was going to run that line?

" A. No, sir.

" Q. Did he agree that the line made by Baird was the right line.

" A. No, sir; he did not.

\* \* \* \*

" Q. Did you ever go to the line and see where the line was that Farwell claimed to be the line?

" A. Yes, sir.

\* \* \* \*

" Q. Did you go with him as far as he asked you to go?

" A. Yes, sir.

" Q. Did he give you any reasons for not going to the lines?

" A. I didn't hear any reasons about it; we went over the

[Farwell *v.* Kohler.]

hill, and it was a very warm day, and he had done consider-able warming up himself, but I hadn't, and he says there is a tree, and he points out here and there, and there is one over yonder, and here is one, pointing in another direction, and, says he, won't they make nice posts, and won't that one over yonder make a nice post, and that's the way he kept going on. The first time, if I remember right, I didn't say anything; but the second time, I suppose it was, that he said this, I says, Mr. Farwell, I didn't come up here to hunt trees, I came up here with you for you to show me the line; says he, if I didn't shut my mouth he would go right back home. I claimed I had as good a right to talk as him; says he, I can't help it, and shows me another tree, and as we went on and when he seen a nice tree, or one that he thought was a nice one, he would stop and show us, and said they claimed to own them nice trees; says I, Mr. Farwell, show me the lines, I will hunt the trees when the time comes; and says he, I told you if you didn't shut up I would go home, and so we started for home."

Upon redirect examination he testified:

" Q. How did you come to go out there with Mr. Farwell to look for the line?

" A. I asked him to go along with me and show me the lines in the first start.

" Q. State what he said to you about not being able to show you the lines when you first spoke to him about it.

" A. He said he didn't know where the lines were; he said I should go to Norris Mayers and he would tell me where I would find the line. I went to him and he told me where I would find them, and I cut up to this line that Norris Mayers told me was the line.

" Q. Where was Norris Mayers at the time he gave you this information?

" A. At his house.

" Q. You were not on the land at the time he told you?

" A. No, sir.

" Q. Did you go according to the directions or instructions Norris Mayers gave you?

" A. Yes, sir."

W. P. Baird, for the plaintiff, testified:

" Question. Well, what did you do?

" Answer. I went to the run, where I knew the line crossed the run, then I traced it on east and marked it.

\*          \*          \*          \*

" Q. State whether you had previous knowledge of that old line?

[Farwell v. Kohler.]

" A. I had ; I had run the same line from that place years before that.

" Q. How far ?

" A. A mile and a half or two miles across the mountain.

" Q. You say it was blazed ?

" A. Yes, sir ; they were old marks on it."

On cross-examination he said :

" Q. Were you on that line after the second time you speak of ?

" A. Yes, sir.

" Q. Who with ?

" A. I was there with the Farwells.

" Q. Anybody else ?

" A. I don't mind who else.

" Q. Did you find another line about twenty rods south of that one that time ?

" A. We found the line, but I didn't measure it.

" Q. Did you examine that line ?

" A. It was a new line, no old marks at all on it.

" Q. How far did you follow that line ?

" A. We didn't follow it very far ; we took the bearings of it to see whether it was correct. The age I didn't consider of any account.

" Q. Was it a correct bearing ?

" A. Yes, it was a correct bearing.

" Q. Do you know who run that line ?

" A. No, I don't.

" Q. How old were these marks ?

" A. To the best of my memory they were one year old.

*　　　*　　　*　　　*

" Q. Did you say anything to Mr. Farwell about the line ?

" A. I said I had not much faith in that new line. It might be a line, but I didn't have any belief in it.

" Q. You made no thorough examination ?

" A. No, sir.

" Q. Are you prepared to say now that the line you showed to Mr. Kohler is the southern line of the Waters Davis tract ?

" A. It is the line I always considered as the southern line of the Waters Davis survey."

A. K. White, for the defendant, testified :

" Question. Have you surveyed the Waters Davis tract (also called the Swayne tract) ?

" Answer. I have run the division line which runs between the Thomas Willings and it.

" Q. Is that the southern line of the tract ?

[Farwell *v.* Kohler.]

" A. Yes, sir; it is the southern line of the Waters Davis, the William Davis, and the George Davis.

" Q. When?

" A. It was either 1874 or 1875, I don't remember just when."

&ast;          &ast;          &ast;          &ast;

Absalom Farwell, one of the defendants, testified that the White line was the line of the tract, and that it was over twenty rods south of the Baird line.

Norris Mayers, for the defendant, testified:

" Question. State whether or not Mr. Kohler at any time came to you to ask you where the southern line of that tract was?

" Answer. Yes, he asked me where it was.

" Q. What did you tell him?

" A. I told him as near as I could where he would find it, is what I told him.

&ast;          &ast;          &ast;          &ast;

" Q. You know where the line is, do you?

" A. Yes, sir. I was along with Mr. Baird when he run it. I was along with him twice in there.

&ast;          &ast;          &ast;          &ast;

" Q. Mr. Mayers, do you know there are two lines, one run by Mr. Baird and another run by Mr. White?

" A. I don't know anything about the White line. I was along with Mr. Baird when he run it; I wasn't along when Mr. White run it. I don't know nothing about the White line. The Baird line is the one I'm talking about."

It was also in evidence that the timber cut by the plaintiff made 7787 posts, and that about 400 could have been made from the timber on the land between the Baird and White lines.

Upon the testimony the Court below, ORVIS, J., charged the jury, *inter alia*, as follows:

" The official survey of the Waters Davis, or this tract, has not been given in evidence, nor the official surveys of any of the surrounding tracts are given in evidence, and there is nothing in evidence by which you can tell where the southern line of this tract is or where it ought to be. There is not a single scintilla of evidence been offered by which a jury could fix the location of this tract. But it is a matter immaterial in the judgment of the Court where the real and true southern line of that tract is, as it appears from the evidence that the plaintiff not only went upon the ground to ascertain that line, but that he went to Absalom Farwell, one of these defendants, for information as to where the line

was ; that he directed the plaintiff to go to Norris Mayers, who knew where the line was, and he would show it to him. He went to Norris Mayers and inquired of him for the information, as directed, who told him, not by going on the ground and pointing it out to him, but by telling him how and where he would find it, and the plaintiff says he went according to the direction of Mayers. Norris Mayers, a witness called by the defendants, admits that the plaintiff came to him for this information, and that he gave him directions how and where he would find the line; that he directed him to the line he knew of, and the only line he knew anything about was the Baird line; that he had been over the line twice and knew of that line, but did not know of the other line run by Mr. White. It would appear from the testimony of Mr. White that there was no such line run upon the ground until 1874, when he run it and marked it. Mayers testified also that the line he knew of was near where Mr. Baird had run it, and that he had been acquainted with that line for twenty years. The plaintiff alleges he went to find the line as Mayers had directed him, and that he found the line according to the directions given by Mayers, and that he cut all the timber up to it that he was to cut under the contract. He also testified that he afterwards got Mr. Baird, a surveyor, to run the line and mark it on the ground for him, and that he went over the job the second time and cut all the timber up to that line that was fit to make salable posts. If he has done this then he has performed his share of the contract according to the terms of it, and he would be entitled to recover in this action of the defendants the balance due, although it may subsequently turn out that the real and proper line of the tract was twenty or twenty-five rods further south; we instruct you that that would not prevent the plaintiff from recovering for all the posts he delivered according to the terms of the contract."

Defendants excepted to this part of the charge. Verdict for the plaintiff, February 25th, 1881, for $327.91, and judgment thereon.

Defendants took a writ of error, assigning as error the charge of the Court as above.

*C. S. McCormick* for plaintiffs in error.

It is conceded all around that one of these lines was the south line of the tract. It is a question of the weight of the testimony, but the Court takes the whole from the jury and says this evidence is not to be considered.

The fact that Norris Mayers pointed out the wrong line

in the judgment of the Court estops the defendants below from having the trees cut to the true line. The fact that Farwell and Kohler went together to see the lands, and ascertain whether the contract had been performed, shows that neither of them expected to be bound by the line pointed out by Mayers.

The Court ought to have submitted to the jury first which of the two lines was the south line of the tract, and if the White line is the true south line then did Kohler, by cutting only up to the Baird line, substantially perform his contract.

*T. C. Hipple* for defendant in error.

Howard Express Company *v.* Wile, 14 P. F. Smith, 201; Corn Exchange Bank *v.* Bank of Republic, 1 W. N. C., 462; Hyatt *v.* Johnston, 7 W. N. C., 561; Eister *v.* Paul, 4 P. F. Smith, 196; Ditmars *v.* Commonwealth, 11 Wr., 337; Hall *v.* Dunham, 1 W. N. C., 487; Snodgrass *v.* Gavit, 4 Casey, 221; Preston *v.* Finney, 2 W. & S., 53.

PER CURIAM: We find no error in the charge of the learned Court. There was no evidence in the case fixing the southern line of the tract. There was no official survey produced showing either the lines or the adjoiners, and if there was some testimony as to the northern line of the Willing tract that proved nothing. Under these circumstances, when Kohler acted under the information given to him by Mayers, to whom he was referred by Farwell, and who directed him to the Baird line, even if that was a mistake of Mayers, it would be a very harsh measure of justice to deny Kohler compensation for the timber which he had actually cut and delivered under his contract.

Judgment affirmed.